ELECTRONICS CORPORATION OF AMERICA vs. THE CANTER
CONSTRUCTION COMPANY.

Suffolk.    October 4, 1961. — November 17, 1961.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Arbitration. Words, "Submission."*

Respecting a contract containing a clause providing for arbitration of
  future controversies, the word "submission" in G. L. (Ter. Ed.) c. 251,
  § 17, meant the doing by the party seeking arbitration of the acts re-
  quired of him by such clause to bring about the arbitration.   [214]
Under a building contract providing that "disputes, claims or questions"
  respecting the interpretation or performance of the contract should be
  "submitted to arbitration in accordance with [the] provisions . . . of
  the American Arbitration Association," a demand for arbitration set-
  ting forth a claim against the builder for improperly done work, filed
  by the other party to the contract with the American Arbitration Asso-
  ciation, could properly, on the record, be treated as a "submission"
  within G. L. (Ter. Ed.) c. 251, § 17.   [215]
The notice referred to in G. L. (Ter. Ed.) c. 251, § 17, was a notice of a
  claim for arbitration and not a notice of a controversy.   [215]
Since a demand for arbitration setting forth a claim, filed with the Ameri-
  can Arbitration Association, constituted both a notice of a claim for
  arbitration and a submission within G. L. (Ter. Ed.) c. 251, § 17, the
  submission, being simultaneous with the notice, was seasonable under
  § 17.   [215]

PETITION, filed in the Superior Court on June 8, 1960.
The case was heard by *J. V. Sullivan,* J.
*Edward H. Bennett, Jr.,* for the defendant.
*Charles F. Choate,* for the plaintiff.

CUTTER, J.   This is a petition, filed on June 8, 1960, by
the plaintiff (Electronics), for acceptance and confirmation
of an arbitration award, and for judgment thereon.   See
G. L. c. 251, prior to its amendment by St. 1960, c. 374, § 1.[1]

---

[1] Statute 1960, c. 374, inserted a new c. 251, effective December 31, 1960;
see § 3, which also provided that c. 251 "as in effect prior to said effective
date shall apply to agreements and proceedings . . . entered into prior to said
effective date."   Except as otherwise stated, references in this opinion are to
c. 251, as in effect prior to December 31, 1960.

The defendant (Canter), in an answer and a motion to set aside the award, set up among other defences Electronics' alleged failure to comply with G. L. c. 251, § 17. The case was heard by a judge of the Superior Court. Canter filed two requests for rulings, one of which is set out in the margin.[2] The judge "did not expressly grant or deny" these but made the following ruling, "Arbitrator's award accepted and confirmed, all statutory requirements having been complied with." The judge found generally for Electronics in the amount of the award. Canter claimed an exception. The case is here upon Canter's bill of exceptions.

On June 20, 1956, Electronics and Canter entered into a contract under which Canter was to construct a building for Electronics. Article 11 of this contract provided, "All disputes, claims or questions pertaining to the interpretation of this contract or the performance by either party . . . shall be submitted to arbitration in accordance with provisions then obtaining of the American Arbitration Association, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award entered may be entered in the court . . . having jurisdiction. . . . [T]he decision of the arbitrators shall be a condition precedent to any right of legal action that any party may have against the other. . . ."

By letter dated January 22, 1958, Electronics gave notice to Canter of alleged defects in Canter's performance, especially leakage in the walls. The letter read in part, "Per our telephone conversation of . . . January 20, I am submitting to you a copy of the report from W. H. Brown Associates with regard to the rain damage in the tower section of" the building constructed by Canter. After listing complaints and possible solutions, and repairs suggested by an architect it concluded, "I will call you on . . . January 23rd so that we . . . [may] arrange a meeting of . . . the architect, you and myself . . . ."

---

[2] Request no. 8 read, "If a demand for arbitration is submitted more than six months after notice of any controversy included within such demand, and there is no evidence of any stipulation between the parties purporting to agree to . . . such submission, then any award that includes any items of such controversy is invalid as being made without jurisdiction under" c. 251, § 17. Request no. 9 was closely similar in content.

On June 18, 1959, Electronics demanded arbitration by submitting a demand to American Arbitration Association as follows: "Demand for breach of contract in that the work done by Canter . . . was not done in accordance with the specifications . . . and . . . the building . . . was not tight to the weather because of poor masonry work . . . . Damages in the amount of $10,000 are sought." It was agreed at the trial that this demand was not filed by stipulation or agreement. Neither the contract nor the rules of the American Arbitration Association provided that a demand for arbitration should be filed by stipulation or agreement or within any specified time.

Shortly thereafter Canter by bill in equity sought to restrain Electronics from proceeding with arbitration, alleging that the controversy described in the demand had been settled by agreement. A preliminary injunction restraining Electronics from proceeding in the arbitration was entered August 4, 1959, and continued in effect until January 6, 1960, when the bill was dismissed, after a hearing before an "auditor" who found that Canter had not sustained its burden of proof that a settlement agreement had been reached.

Shortly after the preliminary injunction had been issued, Electronics began an action at law against Canter, alleging the same breaches of contract referred to in the arbitration demand. Canter moved to stay the action by application under c. 251, § 21, and stated that "Canter . . . is, and has always been ready and willing to submit to arbitration any and all matters arising under said contract of June 20, 1956, that are properly referable to [a]rbitration." A stay was ordered on January 6, 1960.

On March 31 and April 1, 1960, Electronics' demand was heard by arbitrators. Their chairman testified before the trial judge that at the commencement of the arbitration he had asked "if either party had . . . objection to going forward with arbitration; that both attorneys . . . stated that the award would be final, and that . . . [Canter's] attor-

ney said that it was his intention and expectation that the arbitrators would decide the matter, including the question of whether or not the arbitration demand was reasonably timed.''

In May, 1960, the arbitrators filed an award directing (1) Canter to pay to Electronics $6,045, which included damages on account of leaks; (2) that each side pay its own counsel fees and expenses; and (3) that the expenses of the arbitration be borne equally. This award was filed in the Superior Court about June 8, 1960.

The principal issue presented by the trial judge's ruling is the correct interpretation of G. L. c. 251, § 17, inserted by St. 1925, c. 294, § 5.[3] Section 17 reads, ''The submission shall be made within six months, unless otherwise stipulated by the parties, but in no event within less than a reasonable time, after due notice by any party to the contract claiming the arbitration of any controversy thereunder.'' Canter, among other things, contends that the letter of January 22, 1958, constituted notice of a controversy, that submission of the matter to arbitration did not take place thereafter for more than a year and a half, and that, under § 17, this was too late, with the consequence that the Superior Court had no jurisdiction to enforce the award.

Section 17 has not been interpreted by this court, although it was mentioned briefly and inconclusively in *Cueroni* v. *Coburnville Garage, Inc.* 315 Mass. 135, 139–140.[4] The section has been referred to by one text writer as, at the time he wrote (1941), the only instance of such a statu-

---

[3] Section 17 was inserted as a part of general amendments made upon recommendation of Governor Fuller, 1925 Senate Doc. No. 1, at pp. 6–7; and upon petition of various groups interested in expanding, to include future controversies, the preëxisting limited form of statutory arbitration. See 1925 Senate Docs. Nos. 203, 204, and 1925 House Docs. Nos. 746, 953. The bill was enacted (see 1925 House Bill No. 1336) in the form recommended by S. 204 and H. 746. See discussions of this legislation in Mass. L. Q., vol. 9, no. 2, 54–55; vol. 10, no. 2, 62–63; no. 3, 21–25; no. 5, 4 et seq.; Bloomfield, Commercial Arbitration, pp. 256, 264; Curtis, A Comparison of the Recent Arbitration Statutes, 13 Am. Bar Assn. J. 567, 569. No provision similar to old § 17 (inserted in 1925) appears in the current provisions of c. 251, inserted by St. 1960, c. 374, § 1, except perhaps certain language in new § 8 (b).

[4] In discussing an agreement upon the basis of which a stay of an action (in order to permit arbitration) had been sought, Ronan, J., there said, ''If this was an agreement . . . under . . . [c. 251, §§ 14–22], then the defendant was entitled to a stay by . . . § 21, if he did not unreasonably delay in submitting the controversy to arbitration as provided for in § 17.''

tory time limitation. See Kellor, Arbitration in Action, p. 79, no. 32.

The section is ambiguous in various respects: (1) There is doubt about the precise meaning of the term "submission." (2) It also is not wholly clear whether the "submission" must be (a) within six months of notice of a controversy or (b) within six months of a notice claiming arbitration of a controversy. We consider these two principal obscurities in § 17.

(1) We think that, in a case like this where an agreement for arbitration of future controversies is contained in a contract, "submission," as used in § 17, refers to the completion by the party demanding arbitration of the action necessarily to be performed by that party, in accordance with the arbitration clause in his contract, to bring about arbitration. Indeed, as is pointed out in Kellor, Arbitration in Action, pp. 67–68, where, "in a primary contract," there is a clause providing for the "arbitration of a *future* undisclosed dispute," then a "party to such a contract and clause may demand arbitration in the same manner as under a submission." He points out that such a clause is "enforceable . . . as a submission," and that when "such a clause is used, no additional . . . submission is required." If a party to such a clause upon demand can have arbitration, regardless of the current wishes of other parties, then, in substance, the demand serves the same function that is performed by a submission in the case of agreements to arbitrate preëxisting controversies. In a case like this, the demand really constitutes the submission for the purposes of § 17. Of course, some arbitration clauses may call for further acts to be done by the party demanding arbitration (e.g., some form of pleading, meetings to agree on arbitrators, etc.). In such cases, perhaps, more than a demand might be needed to complete the submission. If so, § 17 might operate to prevent delays in completing these further acts for more than a six months' period after demand, unless the period was extended or the time limit waived.

This contract merely provided that a matter "shall be submitted . . . in accordance with provisions . . . of the American Arbitration Association." See *Itek Corp.* v.

*McEnness,* 340 Mass. 409, 411–412. The record does not establish what those provisions were, beyond stating that they did not require that a "demand . . . be filed by stipulation or agreement or within any specified time." The demand for arbitration filed with the American Arbitration Association on June 18, 1959, contained both (a) a demand for arbitration, and (b) a statement of Electronics' claims. The record reveals no evidence which required the trial judge to find that any further action by Electronics was necessary to initiate the arbitration proceeding. The trial judge would have been warranted in treating the demand of June 18, 1959, as a submission within the meaning of § 17, and in view of his ruling, presumably did so.

(2) Although the language of § 17 ("within six months . . . after due notice by any party . . . claiming the arbitration of any controversy") is confusing, we think that its most reasonable meaning is that the notice which starts the six months' period running is a notice of a claim for arbitration and not a notice of a controversy. It would be hard to determine when a complaint in process of negotiation becomes a controversy because the parties cannot agree on a settlement. Kellor, Arbitration in Action, p. 79. A claim for arbitration is an identifiable event. We have been referred to no decided case requiring a different result from that which we reach. No evidence suggests that there was any earlier demand for arbitration than that of June 18, 1959. Since we hold that this demand constituted both a "notice claiming arbitration" and a submission, the submission was within six months of (because simultaneous with) the demand.

Our conclusions are consistent with the general purpose of the 1925 legislation to facilitate arbitration proceedings (see footnote 3, *supra*). They are also consistent with the present tendency to interpret and apply arbitration statutes, agreements, and procedures broadly. See, e.g., *Samincorp So. Am. Minerals & Merchandise Corp.* v. *Lewis,* 337 Mass. 298, 301; *Maxwell Shapiro Woolen Co. Inc.* v. *Amerotron Corp.* 339 Mass. 252, 260; *Robert Lawrence Co. Inc.* v. *Devonshire Fabrics, Inc.* 271 F. 2d 402, 410 (2d Cir.),

cert. granted 362 U. S. 909, cert. dism. 364 U. S. 801.   See also Herzog, Commercial Arbitration, 4 Boston Bar J. 7.

Although a considerable period elapsed between January 22, 1958, and the demand for arbitration of June 18, 1959, there is no suggestion that either the demand for arbitration or the court petition to enforce the award was filed after the expiration of any applicable statute of limitations. Section 17, as we interpret it, imposes no limitation which is effective here.

Canter's requests for rulings (see fn. 2, *supra*) could not have been given.   They are framed on the theory that the six months' period mentioned in § 17 is set running by a notice of a controversy and not, as we hold on these facts, by a demand for arbitration.   Upon our view of § 17, it is unnecessary to consider whether the letter of January 22, 1958, was a notice of a controversy or merely a complaint about defects and a request for negotiations for their correction.   We also do not reach various other grounds suggested by Electronics for sustaining the award.

*Exceptions overruled.*