# PROVIDENCE TEACHERS UNION

### v.

# PROVIDENCE SCHOOL COMMITTEE.

### No. 79–342–Appeal.

Supreme Court of Rhode Island.

Jan. 18, 1982.

Abedon, Stanzler, Biener, Skolnik & Lipsey, Richard A. Skolnik, Providence, for petitioner.

Vincent J. Piccirilli, Providence, for respondent.

OPINION

WEISBERGER, Justice.

This is an appeal from the denial of a petition to confirm and enforce an arbitration award. Raising sua sponte the issue of the validity of the submission, the trial justice vacated the award pursuant to G.L. 1956 (1968 Reenactment) § 28–9–18(c).[1] We reverse.

The facts surrounding the arbitration award are not in dispute. Section 18–5.1 of the Collective Bargaining Agreement between the Providence Teachers Union (union) and the Providence School Committee (committee) required the committee to make available to the union any reasonable

---

1. General Laws 1956 (1968 Reenactment) § 28–9–18 read as follows:

"Grounds for vacating award.—In any of the following cases, the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated.

(a) When the award was procured by fraud.

(b) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter submitted was not made.

(c) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28–9–13."

information pertinent to negotiations, grievances or the enforcement of the agreement. The union requested names and other information concerning teachers who might be affected by a certain grievance then pending. The request was in response to this court's decision in *Belanger v. Matteson*, 115 R.I. 332, 346 A.2d 124 (1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976), directing unions to investigate fully the effect one of their member's claim may have on other members. When the interests of the membership are in conflict, unions must conscientiously and in good faith decide who will be represented. *Id.* at 341, 346 A.2d at 130–31.

The committee answered the request by referring the union to a master list of all teachers in the school system but refused to identify which specific teachers might be affected by the grievance then in question. The union contended that the committee's failure to comply fully with its request was in violation of § 18–5.1 of the Collective Bargaining Agreement.

By letter dated December 16, 1977, and addressed to the American Arbitration Association (AAA), the union requested arbitration pursuant to § 17–5 of the Collective Bargaining Agreement. In accordance with § 17, the committee and the union each chose an arbitrator and the AAA selected the third arbitrator who also served as chairman of the arbitration panel.

At the first hearing date, the union and the committee jointly admitted into evidence the Collective Bargaining Agreement, the union's request for information, and the response to that request signed by the superintendent. The committee, however, rejected the union's framing of the issue presented for arbitration. After discussion

produced no consensus on the statement of the issue, the committee and the panel member it selected left the meeting. The chairman of the panel informed the committee that the arbitration would proceed without it.

The matter continued ex parte, and the arbitrator appointed by the union joined in the issuance of an award written by the chairman. The award required that upon request the committee was to provide the union with the names, home addresses, and telephone numbers of teachers who might be affected by a grievance filed by any other teacher. Shortly thereafter, the union, alleging that the committee had failed to comply with and implement the arbitration award, filed a petition to confirm and enforce the award in the Superior Court. Following the denial of that petition, the union filed a motion requesting that the arbitration be reheard. The Superior Court also denied that motion.

On appeal the union raises three issues: (1) that the trial justice committed reversible error in raising sua sponte the validity of the submission, (2) that the trial justice committed reversible error in finding that the submission was invalid, and (3) that the trial justice abused his discretion in not ordering a rehearing of the arbitration proceeding under § 28–9–19.[2] We find that the union's second issue is dispositive of this appeal, and therefore, we need not reach the other two issues.

Section 28–9–18 requires the court to vacate arbitration awards in three situations,[3] one of which occurs when the "submission or contract" was not valid and an objection to the validity was timely made under § 28–9–13.[4] The trial justice equated the

---

**2.** General Laws 1956 (1979 Reenactment) § 28–9–19 reads as follows:

"Rehearing after vacation of award. —Where an award is vacated, the court, in its discretion may direct a rehearing either before the same arbitrator or arbitrators or before a new arbitrator or arbitrators to be chosen in the manner provided in the submission or contract for the selection of the original arbitrator or arbitrators or as provided for in § 28–9–7, and any provision limiting

the time in which the arbitrator or arbitrators may make a decision shall be deemed applicable to the new arbitration and to commence from the date of the court's order."

**3.** *See* note 1, *supra.*

**4.** General Laws 1956 (1979 Reenactment) § 28–9–13(b) reads as follows:

"(b) A party who has not participated in any of the proceedings had before the arbitrator

lack of agreement on the statement of the issue with the lack of a valid submission. He further found that because the committee had objected to the statement of the issue, it could raise the question of the validity of the submission under § 28–9–13(b).

The crux of this appeal is the meaning of the word "submission" in § 28–9–18(c). With one exception, the term "submission" in chapter 9 is used disjunctively with the term "contract."[5] We believe that this juxtaposition of the terms lends but one construction to "submission" as used in § 28–9–18(c) and that as so construed, that term is of no import in the instant case.

 In the context of the arbitration statute, a "submission" like a "contract" is an agreement. A "contract" is an overall

agreement to arbitrate all or certain future disputes that arise therefrom. On the other hand, a "submission" is an agreement to arbitrate entered into after a particular dispute has arisen. C. Updegraff & W. McCoy, *Arbitration of Labor Disputes* 84–85 (2d ed. 1961). Thus, a "contract" is a pre-dispute agreement to arbitrate and a "submission" is a post-dispute agreement to arbitrate. The use of "submission" or "contract" through the greater part of chapter 9, and particularly in § 28–9–18, can only be interpreted to mean that the Legislature was providing for both pre- and post-dispute agreements to arbitrate.[6]

 The committee would have us define "submission" as agreement on the precise issue in dispute. To do so in

5. In G.L. 1956 (1979 Reenactment) § 28–9–8, the term "submission" appears three times in the same sentence. Once it is used alone and or arbitrators and who has not made or been served with an application to compel arbitration under § 28–9–5 may also put in issue the making of the contract or submission or the failure to comply therewith, either by a motion for a stay of the arbitration or in opposition to the confirmation of the award. If a notice shall have been personally served upon such party of an intention to conduct the arbitration pursuant to the provisions of a contract or submission specified in such notice, then the issues specified in this subdivision may be raised only by a motion for a stay of the arbitration, notice of which motion must be served within ten (10) days after the service of the notice of intention to arbitrate. Such notice must state in substance that unless within ten (10) days after its service, the party served therewith shall serve a notice of motion to stay the arbitration, he shall thereafter be barred from putting in issue the making of the contract or submission or the failure to comply therewith. The arbitration hearing shall be adjourned upon service of such notice pending the determination of the motion. Where such opposing party, either on a motion for a stay or in opposition to the confirmation of an award, sets forth evidentiary facts raising a substantial issue as to the making of the contract or submission or the failure to comply therewith, an immediate trial of the same shall be had. In the event that such party is unsuccessful he may, nevertheless, participate in the arbitration if the same is still being carried on. Any party may, on or before the return day of the notice of application, demand a jury trial of such issue."

twice in juxtaposition with "contract." Its use as an alternate to "contract" is consistent with the interpretation here given to "submission." Its use alone is arguably subject to other interpretations not necessarily inapposite to the one here espoused. It is not inconceivable that a contract providing for arbitration of future disputes would require a submission to engage the arbitration mechanism. The term "submission" has been defined as the completion of the action necessarily to be performed to bring about arbitration in accordance with a contractual arbitration-of-future-disputes clause. *Electronics Corp. of America v. Canter Construction Co.*, 343 Mass. 210, 214, 178 N.E.2d 1, 4 (1961). Apparent inconsistencies arise in interpretation of the meaning of the word "submission" because the meaning of that term in ordinary usage may vary from the meaning of the term when used as a word of art in a particular statute. Our definition in the case at bar is an interpretation of the meaning of the word as it is used disjunctively with "contract" in the statutes here construed. As in *Electronics Corp. of America*, a different context may give rise to a different interpretation.

6. The Legislature's awareness of both pre- and post-controversy arbitration agreements is evident in G.L. 1956 (1979 Reenactment) §§ 28–9–1 through 28–9–3. Those sections concern the enforceability of three types of arbitration agreements: (1) provisions in written contracts to arbitrate any dispute, § 28–9–1; (2) provisions in written contracts to arbitrate disputes arising out of the execution of successor contracts, § 28–9–3; and (3) written agreements to arbitrate existing controversies, § 28–9–2.

§ 28–9–18 would allow ex parte nullification of arbitration agreements. A party cannot avoid arbitration of disputes properly before an arbitration panel by failing to appear at or participate in the proceedings. *See Providence Teachers Union, Local 958 v. McGovern*, 113 R.I. 169, 176, 319 A.2d 358, 363 (1974). The interpretation of § 17–5 of the Collective Bargaining Agreement is obviously a substantively proper matter for arbitration under the arbitration-of-future-disputes clause of that same agreement. To hold that the lack of a mutually acceptable statement of the issue invalidates the submission would provide a convenient vehicle for escaping otherwise binding arbitration contracts.

■ The question of the validity of a "submission" in this case is subsumed by the language of the underlying contractual provision to arbitrate all disputes. The arbitration-of-future-disputes clauses in some contracts do require the parties to enter into a formal submission agreement before the arbitration mechanism becomes operative. O. Fairweather, *Practice and Procedure in Labor Arbitration* 9 (1973). There is no allegation that the contract here in question contains such a clause. Moreover, the committee does not contend that the Collective Bargaining Agreement requires the parties to consent to the specific wording of the issue as a precondition to activation of the arbitration process. The framing of the precise issue is a procedural problem. As a matter of law, procedural questions arising out of an arbitrable dispute should be left to the arbitrator. *School Committee of Pawtucket v. Pawtucket Teachers Alliance AFT Local 930*, R.I., 390 A.2d 386, 390 (1978). As long as the agreement to arbitrate is valid and the subject matter of the dispute is arbitrable, the arbitrator may frame the issues to be decided. *Waverly Mineral Products Co. v. United Steelworkers of America, AFL–CIO, Local No. 8290*, 633 F.2d 682, 685–86 (5th Cir. 1980). There has been neither a finding nor an allegation that the underlying agreement to arbitrate—the "contract"—was invalid or that the dispute was not substantively arbitrable. The vacation of the

award under § 28–9–18(c), therefore, is not justified.

Although not raised on appeal to this court, the committee had argued in its brief to the Superior Court that the award should be vacated because the arbitrators had exceeded their powers. The trial justice, having found that the "submission" was invalid, did not rule on the issue of the arbitrators' powers.

■ Under § 28–9–18(b), the court must vacate an arbitration award when the arbitrators exceeded or imperfectly executed their powers. Apparently, the committee challenged the power of the arbitration panel to shift to the committee the responsibility of deciding which teachers might be affected by a grievance of another teacher. This objection, however, was not based on the power of the arbitration panel but rather on its interpretation of § 18–5.1 of the Collective Bargaining Agreement requiring the committee to make available certain information to the union. Interpretation of a provision of the Collective Bargaining Agreement is clearly within the authority of the arbitration panel under § 17–5 of that agreement, which provides an arbitration process for all disputes arising therefrom.

■ Courts are powerless to disturb arbitration awards for reasons other than those enumerated in § 28–9–18. *Belanger v. Matteson*, 115 R.I. at 351, 346 A.2d at 136. Even if this court believed that the arbitration panel misconstrued § 18–5.1 of the Collective Bargaining Agreement, we could not vacate the award absent "a manifest disregard of the contractual provisions, or a completely irrational result * * *." *Jacinto v. Egan*, R.I., 391 A.2d 1173, 1176 (1978). In *Jacinto* this court held that an award based on a passably plausible interpretation of a contract was within the arbitrator's authority and could not be judicially disturbed. *Id.*

The arbitration award here in question is "sufficiently grounded in the contract" to insulate against substitution of judicial interpretation. Further, we cannot say that

requiring the committee to identify which teachers may be affected by another teacher's grievance is "irrational." We find no basis for the committee's contention that the arbitrators exceeded their powers.

For the reasons stated, the appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for the entry of judgment confirming and enforcing the arbitration award.

SHEA, J., did not participate.