MASSACHUSETTS MUNICIPAL WHOLESALE ELECTRIC COMPANY *vs.* LOCAL 455, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS & others. No. 88-P-1217. December 21, 1989. *Arbitration*, Collective bargaining. *Contract*, Collective bargaining, Arbitration.

On application of the plaintiff pursuant to G. L. c. 150C, § 2(*b*), a judge of the Superior Court issued an order staying arbitration of a dispute between the plaintiff and the defendant concerning overtime assignments.

1. General Laws c. 150C, § 2(*b*), inserted by St. 1959, c. 546, § 1, provides in material part: "Upon application, the Superior Court may stay an arbitration proceeding commenced or threatened if it finds . . . (2) that the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration and disputes concerning the interpretation or application of the arbitration provision are not themselves made subject to arbitration." The defendant made no argument in the Superior Court or in this court that the collective bargaining agreement contained a provision for arbitration of disputes concerning the interpretation or application of the arbitration clause. Those portions of the agreement which are before us show no such provision. In the circumstances, the question whether there had been compliance with the time constraints of the arbitration clause so as to make the particular dispute arbitrable was for the Superior Court judge to decide. See *AT&T Technologies, Inc.* v. *Communications Workers of America*, 475 U.S. 643, 649 (1986). ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *School Comm. of Southbridge* v. *Brown*, 375 Mass. 502, 504 & n.2 (1978); *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional Sch. Dist. Comm.*, 398 Mass. 695, 700 (1986).

2. The time frames provided in the collective bargaining agreement for resolution of grievances were tightly knit and designed to move disputes rapidly through decisional stages or dispose of them for lack of prosecution. The first step called for presentment of a grievance within ten calendar days after the occasion arose; otherwise the right to grieve would be waived. The second step called for a written response by the plaintiff within seven working days. If agreement had not then been reached, there would be a meeting between representatives of the parties within ten working days of the plaintiff's written response. Another written answer was required from the plaintiff within ten working days of that meeting. If the dispute remained unresolved, as was the case here, for forty days after the date of the second step answer of the plaintiff, the agreement provided: "[E]ither party may notify the other, in writing, that the case *will be referred* for settlement to an impartial arbitrator . . . to be appointed by mutual agreement of the [plaintiff] and the [defendant]. No matter *will be submitted* to an impartial arbitrator after sixty-five (65) days from the date of the incident. *Should either party fail to complete its steps in the grievance procedure, that party waives its rights to invoke arbitration.* If the [plaintiff] and the [defendant] cannot agree on an arbitrator after five (5) working days, the American Arbitration Association will be requested to submit a panel of five (5) or more arbitrators. If the [plaintiff] and the [defendant] cannot agree on the arbitrator from the list submitted by the American Arbitration Association, then within five (5) working days after receiving the list, either party may request the . . . Association to name

one of the persons on the list to serve as the arbitrator . . ." (emphasis supplied).

There is no dispute about the essential facts. The incident which gave rise to the grievance occurred on November 7, 1987. The grievance was presented by the defendant on November 16, and the plaintiff's second step response denying relief was given on November 20, 1987. The parties were thereafter unable to resolve the dispute. On December 21, 1987, the defendant wrote to the plaintiff that the defendant was demanding arbitration according to the collective bargaining agreement and submitted five names for the plaintiff's consideration as arbitrator. The defendant said that if the plaintiff did not respond within five working days, the defendant would ask the American Arbitration Association to submit a panel of arbitrators, again in accordance with the agreement. The plaintiff did not reply, and the defendant did nothing further until March 18, 1988 (over two months after the expiration of the sixty-five day time limitation on submission to an arbitrator), when it sent a letter to the American Arbitration Association referring the dispute to arbitration and asking for a list of proposed arbitrators.

The defendant contends that its letter of December 21, 1987, taken in all of the circumstances, was a sufficient submission to an impartial arbitrator so as to satisfy the time requirements of the agreement. The plaintiff argues, and the judge found, that only the March 18, 1988, letter to the American Arbitration Association could be considered as such a submission, and that, of course, was untimely. Unnoticed by all concerned, however, is that, even if the letter of December 21, 1987, may be considered as a submission to an impartial arbitrator, it too was untimely. The plaintiff's second step response was given on November 20, 1987. The agreement provided that a notice of intention to refer a dispute to an arbitrator may be made no sooner than forty days following the second step answer. Notwithstanding this flaw, we consider the legal significance of the December 21, 1987, and March 18, 1988, letters.

Construing the language of the agreement, which he found to be clear and unambiguous, the judge concluded that the December 21, 1987, letter did not constitute a submission to an impartial arbitrator but was, at most, a demand for arbitration, with a list of arbitrators acceptable to the defendant. Implicit in his decision is the conclusion that the March 18, 1988, letter referring the dispute to the American Arbitration Association was a sufficient submission (albeit untimely), even though an arbitrator had yet to be chosen. We agree. Until the dispute had been referred to an arbitrator mutually acceptable to the parties or to an impartial tribunal which would ultimately have the authority (by agreement of the parties) to select an arbitrator, there could be no submission to an impartial arbitrator. The December 21, 1987, letter was not a submission of the dispute to the suggested arbitrators or in a general sense to arbitration, although it was clearly a statement of a plan to do so. The agreement provided for notice

of such an intention. What was said in the context of a commercial arbitration contract provision is, we think, equally apt here. Submission to arbitration (or, as here, to an impartial arbitrator) "refers to the *completion* by the party demanding arbitration of the action necessarily to be performed by that party, in accordance with the arbitration clause in his contract, to bring about arbitration" (emphasis supplied). *Electronics Corp. of America* v. *Canter Constr. Corp.*, 343 Mass. 210, 214 (1961). The defendant, the party demanding arbitration, had not completed the action necessary for referral to an impartial arbitrator until the March 18, 1988, letter to the American Arbitration Association.

*Judgment affirmed.*

*James O. Hall* for the defendant.
*Charles P. Lavelle* for the plaintiff.