Graham, J.
Plaintiff, Natick School Committee (“Committee”), brings an action pursuant to G.L.c. 150C, §2(b) (1992 ed.) to stay the arbitration of grievances brought by the defendant, Education Association of Natick (“Association”). Plaintiff claims that these grievances are not arbitrable based on: 1) an expressed exclusion in the collective bargaining agreement between the parties and 2) conflicting statutes which make the hiring decisions in this case nondelegable and thus not arbitrable.
The defendant argues that since the grievances involve the meaning, application, or interpretation of the agreement, this matter should be referred to arbitration. In addition, the Association asserts that *289 under G.L.c. 150E, §§1, 6, and 8 (1992 ed.) the parties have the authority to enter into collective bargaining agreements which require that a teacher should not be dismissed or non-renewed without just cause. The Committee now moves for summary judgment pursuant to Mass.R.Civ.P. 56.
FACTS
The parties entered into a collective bargaining agreement (“Agreement”) covering the period from September 1, 1991 through August 31, 1994.[1] This Agreement governed the terms and conditions of employment between the Committee and all teachers in the Natick Public Schools. The Agreement also contained a grievance and arbitration procedure for the disposition of disputes arising under the contract. Article VIII, §2 (a) of the Agreement defines a “grievance” as “a complaint by an employee covered by this Agreement and based on an alleged violation of this Agreement or a dispute involving the meaning, interpretation or application thereof.” Under section 3 of the Arbitration section of Article VIII we find the arbitrator’s authority:
In the case of a grievance involving the meaning, application, or interpretation of this Agreement, the decision of the Arbitrator shall be final and binding upon all parties. The Arbitrator must stay within the confines of this Agreement and shall not alter or add to them.
Article III, section 6 of the Agreement states in relevant part:
No teacher will be disciplined, reprimanded, reduced in compensation, suspended, demoted, dismissed, or non-renewed without just cause.
Notwithstanding anything to the contrary in this Agreement, no grievance involving an alleged failure to appoint a person to a promotional or stipendiary position or to not renew the contract of a nontenured teacher or non-tenured administrator shall be arbitrable.
The “just cause” language found in Article III, section 6 was added after two previous arbitrations brought under the prior collective bargaining agreement. Since there was no just cause standard in that agreement, the arbitrator applied an arbitrary and capricious standard of review to the grievances which involved the failure to reappoint two athletic coaches. In exchange for the just cause language, the Committee proposed the language excluding certain types of grievances from arbitration. After some negotiations, the parties agreed on the specific language cited above.
The present grievances are the first to arise under Article III, section 6 of the Agreement concerning the appointment, reappointment, demotion, or dismissal of a teacher to a stipendiary position. In a letter dated December 13, 1993, Superintendent Joseph Keefe notified Steven Saradnik, a social studies teacher at Natick High School, that he would not be reappointed as the Head Coach of the Natick High School baseball team for the 1994 season. Saradnik had served in this appointed stipendiary position for the two previous seasons. In a letter dated December 14, 1993, Principal Donald Bevelander notified Nancy Long, an art teacher, that he was withdrawing her appointments as the art and subscription advisor to the Natick High School Yearbook for the 1993-1994 school year. Long was appointed to this stipendiary position in 1981 and was thereafter never required to reapply for the position and did not receive notice of further appointments.
After receiving these letters, the two teachers filed grievances with the Committee pursuant to Article VIII of the Agreement. Long and Saradnik claim that they were “dismissed” or “non-renewed” without just cause in violation of Article III, section 6 of the Agreement. The Committee denied the grievances and the Association submitted them to arbitration. The Committee then filed this motion for summary judgment to stay the arbitration proceedings.
DISCUSSION
General Laws chapter 150C, §2(b) states in relevant part:
. . . the superior court may stay an arbitration proceeding commenced or threatened if it finds (1) that there is no agreement to arbitrate, or (2) that the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration and disputes concerning the interpretation or application of the arbitration provision are not themselves made subject to arbitration.
“Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.” Massachusetts Municipal Wholesale Electric Co. v. Local 455 International Brotherhood of Electrical Workers, 28 Mass.App.Ct. 921, 922 (1989), citing, AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986). Therefore, the judge can only order arbitration after he has decided that in the collective bargaining agreement the parties agreed to arbitrate. In considering the arbitration issue, a court must avoid ruling on the potential merits of the underlying claims. AT&T, supra at 649.
Courts have created a presumption of arbitrability for labor disputes because it promotes a less hostile resolution to these disputes by arbitrators who have greater competence in interpreting collective bargaining agreements. AT&T, supra at 650 citing, Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 371-72 (1984) (citation omitted). “An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.” AT&T, supra at 650 *290 citing, United Steel Workers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). When the collective bargaining agreement allows disputes concerning the meaning or interpretation of the agreement to be resolved in arbitration, and there is
. . . the absence of any express provision excluding a particular grievance from arbitration,... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.

Id.

The Agreement broadly defines a grievance to include a dispute involving the meaning, interpretation or application thereof. These grievances are subject to binding arbitration under the agreement. Thus, unless there is an express exclusion of the grievances brought by Long and Saradnik, or forceful evidence of a purpose to exclude the claims, arbitration should be allowed in this case.
The Committee argues that there was no agreement to arbitrate the disputes in question because of the express exclusion in paragraph two of Article III, section 6 of the Agreement. The Association counters that this provision is not applicable to the disputes since they involve the dismissal and failure to renew the stipendiary positions as opposed to a failure to appoint. The question then becomes whether the words “failure to appoint” as used in the Agreement intended to include the claims of the two teachers in this case.
The Committee also argues that even if this court does not find an express contractual exclusion for the arbitration of these disputes, the legislature has made the “appointment” issues in the Saradnik and Long grievances nondelegable and thus not arbitrable. The Committee claims under G.L.c. 71, §§47A and 59B (Supp. 1994) that “a school committee lacks legal authority to bind itself in a collective bargaining agreement with respect to the identity of persons to be employed as coaches and advisors.”
Saradnik Grievance
A. Express Exclusion
Saradnik had served two years in his stipendiary position and was notified in December 1993 that he would not be reappointed for the 1994 baseball season. The alleged exclusionary language “failure to appoint” does not unambiguously include failures to reappoint or renew teachers to stipendiary positions. As stated in Warrior & Gulf, supra at 583, doubts should be resolved in favor of coverage.
B. Statutory Exclusion
The Supreme Judicial Court has held, however, that a failure to reappoint at the expiration of an appointed term is not a “removal.” Massachusetts Coalition of Police, Local 165, AFL-CIO v. Northborough, 416 Mass. 252, 255 (1993), citing, Costello v. School Comm of Chelsea, 27 Mass.App.Ct. 822, 826 (1989). In Northborough, a decision not to reappoint a police officer was a nondelegable prerogative of the board of selectman and was not subject to arbitration. In the instant case, the Association argues that the failure to reappoint Saradnik may be construed as a decision “not to renew” him.
Saradnik was nearing the end of his appointed term when he was notified that he would not be reappointed for the upcoming baseball season. General Laws chapter 71, §47A states in relevant part:
The superintendent may contract to employ athletic coaches for periods not in excess of three years.
Thus, the superintendent has the power to appoint and reappoint athletic coaches. Since this authority is nondelegable, it is not subject to an agreement to arbitrate. See e.g. Northborough supra at 254. Accordingly, when Saradnik’s appointed term ended, the superintendent had the sole discretion not to reappoint him. Even if the Association and Committee had agreed to grant the arbitrator the right to decide whether an athletic coach is entitled to reappointment, such an agreement would be unlawful. “(A]n agreement to arbitrate a dispute which lawfully cannot be the subject of arbitration [is] equivalent to the absence of a controversy covered by the provision for arbitration.” Dennis-Yarmouth Regional School Comm v. Dennis Teachers Association, 372 Mass. 116, 119 (1977).
Since there is positive assurance that the arbitration clause in the Agreement is not susceptible to an interpretation covering Saradnik’s grievance and since no lawful relief could be awarded by the arbitrator, Saradnik has no right to advance his case to arbitration. See School Committee of Danvers v. Tyman, 372 Mass. 106, 113 (1977) (committee must show that arbitration provision is “not susceptible to an interpretation that covers the asserted dispute”).
Long Grievance A. Express Exclusion
Long was currently serving the term of her appointments to two stipendiary positions for the 1993-94 school year when she received a letter in December 1993 withdrawing her from the appointments. Since presumably her position would run until the end of the school year in June 1994, one could construe this action as a “dismissal” and thus Long’s grievance could be covered under the Agreement and its arbitration clause. Therefore, I rule that there is an arbitrable issue as to whether Long was dismissed mid-term.[2]
The Committee also argues that even a dispute concerning the meaning, interpretation or application of paragraph two of Article III, section 6 is excluded from arbitration. This argument is not persuasive since one could argue that the word “grievance" as used in paragraph two of Article III, section 6 only refers to complaints concerning failures to appoint as opposed to a dispute concerning the meaning, interpretation or application of the clause.
*291 B. Statutory Exclusion
General Laws chapter 71, §59B states in relevant part:
. . . Principals employed under this section shall be responsible, consistent with district personnel policies and budgetary restrictions . .. for hiring all teachers, instructional or administrative aides, . . . and for terminating all such personnel . . .
Another statutory provision is relevant to this discussion. General Laws chapter 150E, §7(d) (1992 ed.) provides that if a collective bargaining agreement covering public employees contains a conflict between the provisions of the agreement and any law of the Commonwealth which is enumerated in subsection (d) then “the terms of the collective bargaining agreement shall prevail.” Chapter 71 is not one of the laws mentioned in subsection (d).
The absence of a statute from the laws listed in G.L.c. 150E, §7(d) usually meant that the collective bargaining agreement must yield to the statute. See School Committee of Danvers, supra, at 109. But the Supreme Judicial Court has held that “in the absence of a material conflict with a statute not enumerated in §7(d), the agreement may be enforced.” Leominster v. International Brotherhood of Police Officers Local 338, 33 Mass.App.Ct. 121, 125 (1992); Rooney v. Yarmouth, 410 Mass. 485, 493 n.4 (1991); Massachusetts Organization of State Engineers and Scientists v. Commissioner of Admn., 29 Mass.App.Ct. 916, 917 (1990); Fall River v. Teamsters Union Local 526, 27 Mass.App.Ct. 649, 651 (1989).
Therefore, this court must decide whether, in the case that the present dispute is covered in the Agreement, a just cause standard of review materially conflicts with the provisions of G.L.c. 71 §59B. I rule that no material conflict exists.
Under subsection 59B, the principal has the power to hire and terminate all instructional or administrative aids. However, General Laws chapter 150E, §8 (1992 ed.) provides that collective bargaining agreements covering public employees may provide for binding arbitration notwithstanding any contrary provisions of section 59B of chapter 71. The clause also states that the section applies when arbitration is a means under a collective bargaining agreement of resolving grievances concerning job appointments.
Furthermore, the standard applied when determining the nondelegability of a labor dispute claim is:
whether the ingredient of public policy in the issue subject to dispute is so comparatively heavy that collective bargaining, and even voluntary arbitration, ... is, as a matter of law, to be denied effect.
See School Committee of Boston v. Boston Teachers Union Local 66, 378 Mass. 65, 70-71 (1979). The present dispute over a school advisory position is not an issue so vital to public policy that it should not be subject to a just cause provision in a collective bargaining agreement.
ORDER
For the foregoing reasons, the plaintiffs motion for summary judgment to stay the arbitration is DENIED with respect to the Long grievance and ALLOWED with respect to the Saradnik grievance.

In its memorandum, plaintiff incorrectly cites the effective dates of the Agreement as January 1, 1991 to December 31, 1994. The plaintiff admitted in its answer to the complaint that the effective dates are September 1, 1991 to August 31, 1994.

Plaintiff admits that a mid-term dismissal of a teacher in a stipendiary position is arbitrable. See Plaintiffs Reply Memorandum, p. 6.