Local No. 1710, International Association of Fire Fighters, AFL-CIO v. Chicopee.

## LOCAL No. 1710, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO vs. CITY OF CHICOPEE.[1]

Hampden. October 4, 1999. - December 13, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Fire Fighter. Contract,* Arbitration, Collective bargaining contract, Construction of contract. *Labor,* Fire fighters, Collective bargaining, Arbitration, Grievance procedure. *Arbitration,* Fire fighters, Collective bargaining, Arbitrable question, Judicial review, Scope of arbitration. *Municipal Corporations,* Collective bargaining, Estoppel. *Estoppel.*

Discussion of cases considering principles governing arbitration under a collective bargaining agreement. [419-424]

Where an arbitration clause in a collective bargaining agreement was limited to grievances related to "wages, hours, standards of productivity or performance or other terms and conditions of employment," and where a seventy-five day filing deadline for grievances was not a term and condition of employment, a claim by an employer that certain grievances were untimely was not arbitrable. [424-429]

In an action brought under G. L. c. 150C, § 2 (*a*), to compel arbitration under a collective bargaining agreement, a Superior Court judge correctly concluded that the grievance was not timely where it had not been filed within seventy-five days of the date the grievants became aware of the grievance. [429-430]

CIVIL ACTION commenced in the Superior Court Department on July 30, 1997.

A motion to compel arbitration was heard by *C. Brian McDonald,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*David B. Rome* for the plaintiff.

*Barbara J. Sweeney* for the defendant.

*Donald Siegel, Mary T. Sullivan, Ann Clarke, & David Rome,* for Massachusetts AFL-CIO & others, amici curiae, submitted a brief.

---

[1]We acknowledge receipt of a brief from the Massachusetts AFL-CIO, Professional Fire Fighters of Massachusetts, and the Massachusetts Teachers Association, as amici curiae.

LYNCH, J. This is an appeal by Local No. 1710, International Association of Fire Fighters (union), from the denial by a Superior Court judge of its motion to compel arbitration. G. L. c. 150C, § 2 (*a*). The union claims that the judge's decision regarding the timeliness of the grievance was a ruling on "procedural" rather than "substantive" arbitrability in violation of the plain meaning of G. L. c. 150C, § 2 (*a*), settled State and Federal law, and public policy. The union also disputes the judge's finding of fact regarding the timeliness of the grievance. We granted the union's application for direct appellate review, and we affirm the decision of the Superior Court judge.

1. *Facts and procedural history.* Paul Loranger and Thomas Stefanik (grievants) were fire fighters who had been employed by the city of Chicopee (city). Each suffered what were eventually ruled to be work-related injuries rendering them incapable of performing their duties as fire fighters.[2] While the two grievants were absent from work, before a determination that the injuries were work-related, the city did not place them on injured leave, but charged their absences to their accumulated sick or vacation leave.[3] Loranger claims that he questioned Chief Robert Nunes about the coverage and was told that the city would reimburse him for the sick leave when it was clear that Loranger's injury was work-related. The city granted the grievants' work-related disability retirements on November 22, 1996.

The grievants were members of the union which had a collective bargaining agreement (agreement) with the city. Article 25.05 of the agreement requires the city to compensate retiring fire fighters "for accumulated unused sick leave credited to their account [according to a formula]." When the grievants retired, their compensation did not include reimbursement for the sick (or vacation) leave they used to cover their absences from work.[4]

Article 5.01 of the agreement provides for a final and binding

---

[2]Loranger was unable to work after November, 1995; Stefanik, after July, 1991.

[3]According to art. 25.01 of the collective bargaining agreement (agreement) if the city had placed the fire fighters on injured leave, the leave would have been covered by the city and the grievants would not have used their sick or vacation leave.

[4]The agreement does not contain a provision requiring the city to pay retirees for unused vacation leave.

arbitration when grievances remain unresolved "as to the meaning, application or interpretation of this Agreement relating to wages, hours, standards of productivity or performance or other terms and conditions of employment." On January 27, 1997, sixty-seven days after the grievants retired, the union filed grievances on their behalf arguing that the grievants should have been reimbursed for the sick or vacation leave they used during their work-related illness. The city refused either to proceed with the grievances or to allow them to be submitted to arbitration. The union then moved to compel the city to arbitrate, pursuant to G. L. c. 150C, § 2 (*a*).

The city argued that the agreement's arbitration clause did not apply to this case for two reasons. First, it argued that, because the grievants were retired when the grievances were filed, they were no longer members of the union and thus not covered by the agreement. Second, the city claimed that the union's grievance was not timely because it was not filed within seventy-five days of the date the grievants became aware of a grievance, as required by the agreement. The city maintained that the grievances arose while the grievants were being denied injured leave. The city stated that the union had to file grievances within seventy-five days of the date they were first denied injured leave, not when they received their retirement compensation.

A Superior Court judge ruled that the union did have standing to sue under the agreement on behalf of retired employees because the grievances arose while the grievants were members of the union. The judge then ruled that the city could not be compelled to arbitrate over these particular claims because the grievances were not timely. The judge found that the grievants were aware or should have been aware that they had a grievance long before they retired.[5] The judge rejected the union's estoppel argument as to the issue of Chief Nunes's assurances to Loranger that the city would reimburse him.[6]

2. *Analysis.* The statute applicable to this case, G. L. c. 150C, § 2 (*a*), states that, if one party to a collective bargaining agree-

---

[5]For Loranger, it was one full year before he retired, and for Stefanik it was more than five years before he retired.

[6]The judge noted that neither party had addressed whether Nunes had the authority to make decisions about restoring leave and cited *A P East, Inc.* v. *Assessors of Westborough*, 40 Mass. App. Ct. 912, 913-914 (1996), to rule that estoppel against public officials is disfavored.

ment refuses to arbitrate, the aggrieved party may request a court order to arbitrate, and "[t]he court shall order arbitration unless (1) the opposing party denies the existence of the agreement to arbitrate; or (2) the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration; provided, that an order for arbitration shall not be refused where a dispute concerning the interpretation or application of the arbitration provision is itself made subject to arbitration . . . . In either event the court shall proceed summarily to the determination of the issue so raised and shall, if it finds for the applicant, order arbitration; otherwise, the application shall be denied."[7]

In applying this and other provisions of the labor statute, Massachusetts courts have looked to a series of United States Supreme Court cases for guiding principles, including *AT&T Techs., Inc.* v. *Communications Workers*, 475 U.S. 643 (1986) (*AT&T*); *United Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960); *United Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *United Steelworkers* v. *American Mfg. Co.*, 363 U.S. 564 (1960).[8] (The latter are collectively known as the "Steelworkers Trilogy.") See, e.g., *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional Sch. Dist. Comm.*, 398 Mass. 695, 700 (1986); *School Comm. of Southbridge* v. *Brown*, 375 Mass. 502, 504 (1978); *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 113 (1977); *Mugnano-Bornstein* v. *Crowell*, 42 Mass. App. Ct. 347, 351 (1997); *Massachusetts Mun. Wholesale Elec. Co.* v. *Local 455, Int'l Bhd. of Elec. Workers*, 28 Mass. App. Ct. 921, 922 (1989).

These United States Supreme Court decisions have established a set of principles governing arbitration that are most clearly set out in *AT&T, supra.* The first principle is that "arbitration is a

---

[7]This statute is in keeping with a broad national policy favoring peaceful resolution of labor disputes. See *Martin* v. *Norwood*, 395 Mass. 159, 163 (1985), citing *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 108 n.3 (1977) (Federal policy favors arbitration); *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 372 Mass. 605, 612 & n.14 (1977), citing *John Wiley & Sons* v. *Livingston*, 376 U.S. 543, 549-550 (1964) ("there is a general policy of favoring voluntary arbitration in the labor field").

[8]These cases considered the Labor Management Relations Act. Congress intended its Federal labor laws to supplement State jurisdiction over labor contracts. See *Boys Mkts., Inc.* v. *Retail Clerks Union, Local 770*, 398 U.S. 235, 243 (1970), quoting *Charles Dowd Box Co.* v. *Courtney*, 368 U.S. 502, 511 (1962).

matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 648, quoting *United Steelworkers* v. *Warrior & Gulf Navigation Co., supra* at 582. See *John Wiley & Sons* v. *Livingston,* 376 U.S. 543, 547 (1964); *School Comm. of Boston* v. *Boston Teachers Union, Local 66,* 372 Mass. 605, 613 (1977), citing *Massachusetts Nurses Ass'n* v. *Lynn Hosp.,* 364 Mass. 502 (1974) ("there is an understandable attitude of wariness about arbitration forced on a party").

The second principle is that the question whether an agreement creates a duty to arbitrate is "undeniably an issue for judicial determination . . . [u]nless the parties clearly and unmistakably provide otherwise." *AT&T, supra* at 649, citing *United Steelworkers* v. *Warrior & Gulf Navigation Co., supra* at 582-583, and cases cited. The courts determine whether a contract to arbitrate exists partly because of contract law and partly because of a public policy favoring arbitration. "The willingness of parties to enter into agreements [to arbitrate] would be 'drastically reduced,' however, if a labor arbitrator had the 'power to determine his own jurisdiction.' " *AT&T, supra* at 651, quoting Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482, 1509 (1959).

The third principle is that, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims . . . [including] determining whether there is particular language in the written instrument which will support the claim." *AT&T, supra* at 649-650, quoting *United Steelworkers* v. *American Mfg. Co., supra* at 568. The final principle is that, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage . . . Such a presumption is particularly applicable where the clause is . . . *broad*" (emphasis added). *AT&T, supra* at 649, quoting *United Steelworkers* v. *Warrior & Gulf Navigation Co., supra* at 582-583.[9] The provisions of G. L. c. 150C, § 2 (*a*), embody these principles because a court must order arbitration, except

---

[9]In Massachusetts, once a judge determines that a grievance should be settled by an arbitrator, judicial review of the arbitrator's decision is limited

under two conditions that reflect concerns over contract principles.

For this case, it is important to note that the Steelworkers Trilogy and the *AT&T* case all involved very broad arbitration clauses. A broad arbitration clause is known as a standard arbitration clause[10] which essentially states that "all disputes" regarding the agreement are subject to arbitration. See *AT&T*, *supra* at 645 n.1 ("any differences arising with respect to the interpretation of this contract or . . . any obligation" [unless excluded]); *United Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593, 594 (1960) ("any differences 'as to the meaning and application' of the agreement"); *United Steelworkers* v. *Warrior & Gulf Navigation Co.*, *supra* at 576 ("[s]hould differences arise . . . as to the meaning and application of the provisions of this Agreement"); *United Steelworkers* v. *American Mfg. Co.*, *supra* at 565 & n.1 ("all disputes between the parties 'as to meaning, interpretation and application of the provisions of this agreement' "). See also *Cape Cod Gas Co.* v. *United Steelworkers, Local 13507*, 3 Mass. App. Ct. 258, 262 (1975), quoting *United Steelworkers* v. *American Mfg. Co.*, *supra*. The principles established by the Steelworkers Trilogy and the *AT&T* case lead us to conclude that, where the arbitration clause is not broad, courts must be sure that the parties contracted to arbitrate the issue at hand. See *AT&T*, *supra* at 648, 649.

In this case, the union seeks to minimize the issue of the breadth of the arbitration clause and argues that it has not found any case which focused on this issue. We disagree with the union's contention that State and Federal courts do not base their decisions on the scope of the arbitration clause. Further, none of the cases the union relies on supports its contention.

---

by both statute and case law. The judge may only vacate the award if the "arbitrators exceed[] their powers." *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional Sch. Dist. Comm.*, 398 Mass. 695, 701 (1986), quoting G. L. c. 150C, § 11. Even blatant mistakes of law or misinterpretation of the agreement are not subject to judicial review. *Id.*, and cases cited. The Massachusetts rule regarding judicial review is derived from the Steelworkers Trilogy. See *Morceau* v. *Gould-National Batteries, Inc.*, 344 Mass. 120, 124 (1962).

[10]The United States Supreme Court refers to a broad arbitration clause as a "standard" arbitration clause. See *AT&T Techs., Inc.* v. *Communications Workers*, 474 U.S. 643 (1986); *United Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960). Our research leads us to conclude that broad arbitration clauses are more common than limited arbitration clauses.

The reason courts have not focused on the scope of the arbitration clause is precisely because the arbitration agreements were broad enough to allow the courts to find a contract to arbitrate. For example, the union cites *Bartley, Inc.* v. *Jefferson Parish Sch. Bd.*, 302 So. 2d 280 (La. 1974), but there the court first inquired whether there was an agreement to arbitrate. *Id.* at 281. The court concluded there was an agreement to arbitrate because there was a broad arbitration clause covering "[a]ll claims, disputes and other matters . . . arising out of, or relating to, this Contract." *Id.* at 282. Once it concluded there was an agreement to arbitrate the court allowed procedural issues to be considered by the arbitrator. Similarly, a New York court said in *City Sch. Dist. of Poughkeepsie* v. *Poughkeepsie Pub. Sch. Teachers Ass'n*, 35 N.Y.2d 599, 607 (1974), that, although the arbitration clause at issue was not " 'broad' . . . nonetheless, it contemplates arbitration as 'to the interpretation and the application of the provisions of this agreement insofar as the same may be necessary for a determination of the grievance.' Since the 10-day limitation of time is found in a provision of the agreement, it would seem that a decision as to its application would be procedurally necessary to a determination of the grievance here." See *Lewiston Firefighters Ass'n, Local 785* v. *Lewiston*, 354 A.2d 154, 164 (Me. 1976) ("[a]ll claims, demands, disputes . . . arising under, out of or in connection with . . . this agreement"); *Union County Sch. Dist. No. 1* v. *Valley Inland Pac. Constructors, Inc.*, 59 Or. App. 602, 608 (1982) (all claims and disputes within certain limits); *Local Div. No. 812 of Clarksburg, Amalgamated Transit Union* v. *Central W. Va. Transit Auth.*, 179 W. Va. 31, 33 n.1, 35 (1987) ("[a]ll grievances" "broad" language; thus employee's discharge falls within terms and conditions provision of agreement).[11]

Furthermore, the United States Supreme Court ruled in *International Union of Operating Eng'rs, Local 150* v. *Flair Bldrs., Inc.*, 406 U.S. 487 (1972), that the broad nature of an arbitration clause, which stated that "any difference" between the parties would be subject to arbitration, allowed a laches defense to be decided by the arbitrator. *Id.* at 488. "There is nothing to

---

[11]The union also cites *Des Moines* v. *Central Iowa Pub. Employees Council*, 369 N.W.2d 442, 444 (Iowa 1985). The case is not on point because it dealt not only with a court review of an arbitrator's *award*, but also with the fact that the city of Des Moines had voluntarily submitted the grievance issue to arbitration.

limit the sweep of this language or to except any dispute or class of disputes from arbitration. *In that circumstance*, we must conclude that the parties meant what they said — that 'any difference,' which would include the issue of laches . . . should be referred to the arbitrator . . .'' (emphasis added). *Id.* at 491.

In this case, however, the arbitration clause cannot be called broad because it contains words of limitation. Article 5.01 defines grievance as ''a complaint as to the meaning, application or interpretation of the Agreement *relating to wages, hours, standards of productivity or performance or other terms and conditions of employment*'' (emphasis added). Further, art. 5.06 states that, while the decision of the arbitrator is final and binding, ''the arbitrator shall have no power to add to, subtract from or modify any of the terms of this Agreement.''

Because of the words of limitation contained in the agreement, the question before us is whether the seventy-five day filing deadline falls within the ''terms and conditions'' portion of the arbitration clause. We conclude that it does not. The opinions which have addressed terms and conditions of employment apply the phrase to concrete issues about the way an employer interacts with its employees on the job. See *Lynn* v. *Labor Relations Comm'n*, 43 Mass. App. Ct. 172, 178 (1997) (terms and conditions encompass matters arising between employer and employee). See also *Massachusetts Nurses Ass'n* v. *Lynn Hosp.*, 364 Mass. 502, 508 (1974) (agency service fee for nurses who did not join union part of terms and conditions of employment); *School Comm. of Medford* v. *Labor Relations Comm'n*, 8 Mass. App. Ct. 139, 140 (1979) (health and life insurance within terms and conditions under statute). Cf. *West Bridgewater Police Ass'n* v. *Labor Relations Comm'n*, 18 Mass. App. Ct. 550 (1984) (unscheduled overtime not term of employment).

The union asks that we read G. L. c. 150C, § 2 (*a*), differently, and conclude that it limits a court's review of issues to those of ''substantive arbitrability.'' It requests that we look at the underlying claim for sick time reimbursement the two grievants have, and conclude that it is that ''claim'' that is covered by the arbitration agreement and thus it cannot be denied arbitration under G. L. c. 150C, § 2 (*a*). However, even the union admits that the dispute is not whether the underlying claim is arbitrable. The dispute revolved around the city's claims that these particular grievances were not arbitrable because of un-

timeliness.[12] The city's claim is, essentially, that it did not contract to arbitrate these particular grievances. We conclude it is proper for a court to consider timeliness when the level of inquiry is whether there was a contract to arbitrate a particular grievance. See *School Comm. of Southbridge* v. *Brown*, 375 Mass. 502, 504 (1978) (proper function of court is to determine whether parties agreed to arbitrate *particular* dispute).

The union urges us to adopt a broad based rule that would categorize any timeliness issue as a "procedural" issue always subject to arbitration. The union claims that its proposed rule, encompassed in G. L. c. 150C, § 2 (*a*), is the rule the United States Supreme Court set out in *John Wiley & Sons* v. *Livingston*, 376 U.S. 543, 557 (1964), and is indorsed by most States. The union further claims that *Massachusetts Mun. Wholesale Elec. Co.* v. *Local 455, Int'l Bhd. of Elec. Workers*, 28 Mass. App. Ct. 921, 922 (1989), on which the judge relied, was incorrectly decided by the Appeals Court because it did not indorse the *Wiley* approach. We address each of these arguments in turn.

The union is correct that G. L. c. 150C, § 1, demonstrates the Legislature's intent to have parties resolve grievances through arbitration. But the plain language of G. L. c. 150C, § 2 (*a*), does not require that all procedural issues are a question for the arbitrator. The two statutory provisions properly balance concern for contract law with a policy favoring arbitration.

We also do not accept the union's assertion, based on *Wiley*, that the procedural rule it proposes is in keeping with Federal law. *Wiley* did not adopt a blanket rule that *all* procedural issues are a matter for the arbitrator. In *Wiley*, a union had an agreement with one company at the time it merged with Wiley. The question before the United States Supreme Court was whether Wiley, as the successor company, could be bound by the agreement and required to arbitrate, pursuant to the terms of the agreement. The Court ruled that union rights survived the merger. *John Wiley & Sons* v. *Livingston, supra* at 549-551. There was a procedural issue tied up with the substance of the agreement and the Court ruled that, if the two were tied together,

---

[12]As discussed, *supra*, the city contended that it did not have to arbitrate because retirees were not covered under the agreement. We also note that we do not agree with the union's contention that timeliness was not effectively raised by the city. The union claims that the city briefed only the retirement argument. However, the city did raise the issue in its answer as an affirmative defense.

then it made no sense to separate them.[13] However, the Court also said, "[*o*]*nce it is determined* [by the court] *that the parties are obligated to submit the subject matter of a dispute to arbitration,* 'procedural' questions which *grow out of the dispute* and bear on the final disposition should be left to the arbitrator" (emphasis added). *Id.* at 557.

Not only did *Wiley* not establish a blanket rule that all procedural issues must be decided by an arbitrator, but also, in *International Union of Operating Eng'rs, Local 150* v. *Flair Bldrs., Inc.,* 406 U.S. 487 (1972), the United States Supreme Court declined an opportunity to extend the rule favoring arbitration to a case with facts similar to this case. There a company tried to prevent an order compelling arbitration by arguing laches. The union had waited over five years before filing a grievance when the agreement said that grievances should be filed within forty-eight hours after a dispute was not settled. *Id.* at 489. The union urged the Court to decide that, even if the parties had "not agreed to arbitrate the laches issue, *Wiley* requires that the arbitrator resolve the question as an integral part of the underlying contract dispute." *Id.* at 490-491. The Court declined to create such a rule: "We need not reach the question posed by petitioner, for we find that the parties did in fact agree to arbitrate the issue of laches here." *Id.* at 491.

In this case, the union also argues that virtually every State except Maryland indorses the union's version of the *Wiley* rule.[14] The union cites a myriad of State court decisions from other

---

[13]In *John Wiley & Sons* v. *Livingston,* 376 U.S. 543, 555-557 & n.11 (1964), the grievance process entailed three steps, the last being to have the issue heard by an arbitrator. There was a clause in the agreement stating that failure to follow the procedures within a certain time limit resulted in an abandonment of the grievance. The procedural issue to which the *Wiley* court referred was whether the union was barred from grieving before an arbitrator because it had not followed the first two steps. The union argued that following the first two steps was futile because the new company had refused "to recognize the Union's representative status," *id.* at 557, where meeting with the union was an integral part of the initial steps. It was in this context that the Court ruled that the procedural issue was one for the arbitrator to decide. *Id.*

[14]The union also cites a number of Federal decisions to support its position. A review of them also shows that the arbitration clauses at issue were broad. See *Local 285, SEIU* v. *Nonotuck Resource Assocs., Inc.,* 64 F.3d 735, 738 (1st Cir. 1995) (dispute pertaining to interpretation, application or compliance with provisions of the agreement); *Toyota of Berkeley* v. *Automobile Salesman's Union, Local 1095,* 834 F.2d 751, 752 (9th Cir. 1987), cert. denied, 486 U.S. 1043 (1988) (clause including interpretation of agreement al-

jurisdictions without distinguishing the breadth of the arbitration clause at issue. Our examination of cases cited by the union reveals that, while it is true that the cases do cite *Wiley* for the proposition that procedural issues should be decided by an arbitrator, most cases involved broad arbitration clauses.[15] See *International Bhd. of Teamsters, Local 959* v. *King*, 572 P.2d 1168, 1171 (Alaska 1977) (any grievance); *Skidmore, Owings & Merrill* v. *Connecticut Gen. Life Ins. Co.*, 25 Conn. Supp. 76, 80, 88 (1963) (all questions under agreement); *Wilmington* v. *Wilmington Firefighters Local 1590*, 385 A.2d 720, 722 n.1 (Del. 1978) (disputes or misunderstandings concerning application or interpretation of agreement); *Carter* v. *Cathedral*

lows arbitration of dispute); *Niro* v. *Fearn Int'l, Inc.*, 827 F.2d 173, 175 n.1 (7th Cir. 1987) ("any dispute or difference of opinion . . . involving the meaning, interpretation or application of . . . Agreement"); *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447* v. *Chevron Chem. Co.*, 815 F.2d 338, 342 (5th Cir. 1987) (agreement allows arbitrator to decide arbitrability issues); *Becton Dickinson & Co.* v. *District 65, United Auto., Aerospace & Agric. Implement Workers*, 799 F.2d 57, 59 (3d Cir. 1986) ("general application, interpretation or alleged violation" of collective bargaining agreement is subject to arbitration); *Denhardt* v. *Trailways, Inc.*, 767 F.2d 687, 689 (10th Cir. 1985) ("any dispute" is "sweeping" arbitration clause); *Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers, Helpers, Inside Workers, Bottlers, Warehousemen, School, Sightseeing, Charter Bus Drivers, General Promotional Employees of Affiliated Indus., Local No. 744* v. *Metropolitan Distribs., Inc.*, 763 F.2d 300, 303 (7th Cir. 1985) (arbitration clause covers "any difference"); *Nursing Home & Hosp. Union No. 434* v. *Sky Vue Terrace, Inc.*, 759 F.2d 1094, 1096 (3d Cir. 1985) ("any dispute" clause); *Automotive, Petroleum & Allied Indus. Employees Union, Local Union No. 618* v. *Town & Country Ford, Inc.*, 709 F.2d 509, 513 (8th Cir. 1983) ("no question about the breadth of the arbitration clause"); *Pilot Freight Carriers, Inc.* v. *International Bhd. of Teamsters*, 659 F.2d 1252, 1255 (4th Cir. 1981) (provision for all grievances or questions of interpretation is broad clause); *Hospital & Inst. Workers Union Local 250* v. *Marshal Hale Memorial Hosp.*, 647 F.2d 38, 41 n.2 (9th Cir. 1981) ("any grievance or complaint concerning the interpretation or application of the terms of this Agreement"); *Local 178, United Rubber, Cork, Linoleum & Plastic Workers* v. *Interco, Inc.*, 415 F.2d 1208, 1210 (8th Cir. 1969) ("any matters covered by this agreement"). Cf. *General Drivers, Local Union 89* v. *Moog Louisville Warehouse*, 852 F.2d 871, 872-874 (6th Cir. 1988) (clause "conclusively presum[ing]" waiver of arbitration by timeliness failure is question for courts).

[15]In some of the cases cited by the union, the actual wording of the arbitration clause is not clear to the reader. See, e.g., *Cottonwood* v. *James L. Fann Contracting, Inc.*, 179 Ariz. 185, 187-188 & n.1 (1994); *Pueblo* v. *Pueblo Ass'n of Gov't Employees*, 839 P.2d 503, 505 (Colo. Ct. App. 1992); *Mount Dora* v. *Central Fla. Police Benevolent Ass'n*, 600 So. 2d 520, 521 (Fla. Dist. Ct. App. 1992).

*Ave. Coop., Inc.*, 658 A.2d 1047, 1049 (D.C. 1995) (agreement stating arbitration panel decides procedural issues); *Bartley, Inc.* v. *Jefferson Parish Sch. Bd.*, 302 So. 2d 280, 282 (La. 1974) ("all claims, disputes and other matters . . . arising out of, or relating to, this Contract"); *Lewiston Firefighters Ass'n, Local 785* v. *Lewiston*, 354 A.2d 154, 164 (Me. 1976) ("[a]ll claims, demands, disputes . . . arising under, out of, or in connection with . . . this agreement"); *City Sch. Dist. of Poughkeepsie* v. *Poughkeepsie Pub. Sch. Teachers Ass'n*, 35 N.Y.2d 599, 607 (1974) (arbitration clause "contemplates arbitration as 'to the interpretation and the application of the provisions of this agreement' "); *Union County Sch. Dist. No. 1* v. *Valley Inland Pac. Constructors, Inc.*, 59 Or. App. 602, 608 (1982) (all claims and disputes within certain limits); *School Comm. of Pawtucket* v. *Pawtucket Teachers Alliance AFT Local 930*, 120 R.I. 810, 812 (1978) (grievance which arises "out of contractual application, meaning or interpretation"); *Local Div. No. 812 of Clarksburg, Amalgamated Transit Union* v. *Central W. Va. Transit Auth.*, 179 W. Va. 31, 33 n.1, 35 (1987) ("[a]ll grievances" is "broad" language, thus employee's discharge falls within terms and conditions provision of agreement). One case involved a vaguely worded procedural deadline. See *Boys Club of San Fernando Valley, Inc.* v. *Fidelity & Deposit Co.*, 6 Cal. App. 4th 1266, 1275 (1992) (notice of demand within "reasonable time").

Given the significant distinction between narrow and broad arbitration clauses, we also disagree with the union that *Massachusetts Mun. Wholesale Elec. Co.* v. *Local 455, Int'l Bhd. of Elec. Workers*, 28 Mass. App. Ct. 921, 922 (1989) (*MMWEC*), was improperly decided. *MMWEC* also involved a timeliness issue. The Appeals Court inferred a narrow arbitration clause because the "defendant made no argument in the Superior Court or in [the Appeals Court] that the [agreement] contained a provision for arbitration of disputes concerning the interpretation or application of the arbitration clause." *Id.* The agreement in *MMWEC* did contain an arbitration clause that outlined a grievance process and contained an explicitly worded waiver clause: "No matter *will be submitted* to an impartial arbitrator after sixty-five (65) days from the date of the incident. *Should either party fail to complete its steps in the grievance procedure, that party waives its rights to invoke arbitration.*" *Id.* The Appeals Court relied on this court's decisions in *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional Sch. Dist. Comm.*,

398 Mass. 695, 700 (1986), and *School Comm. of Southbridge* v. *Brown*, 375 Mass. 502, 504 & n.2 (1978), to conclude that, because the agreement did not contain a provision concerning the interpretation or application of the arbitration clause itself, it was for the judge to decide whether there had been compliance with time constraints. *MMWEC, supra* at 922.[16]

Here the arbitration clause contains words of limitation that leave to the court rather than the arbitrator the task of determining whether the city contracted to arbitrate the meaning of the seventy-five day limit.

The union raises concerns about the impact of our decision. Those concerns are unfounded. Our approach is a balance between contract concerns and a policy favoring arbitration. The approach allows arbitration where the clause is broad and denies it when the parties have contracted to limit the scope of arbitration. By this balanced approach, we differentiate from the Maryland rule which is to make all procedural issues a matter for the court, even when there are broad arbitration clauses. See *Chesapeake Beach* v. *Pessoa Constr. Co.*, 330 Md. 744 (1993); *Frederick Contractors, Inc.* v. *Bel Pre Med. Ctr., Inc.*, 274 Md. 307, 314 (1975).[17]

The union argues that, even if we conclude that the language of G. L. c. 150C, § 2 (*a*), allows the court to decide the issue of timeliness, we should nevertheless overturn the judge's decision to reject the union's estoppel argument. The union argues that our principle of disfavoring estoppel against public officials, relied on by the judge in his decision, is inapplicable here

---

[16]In *Carpenter* v. *Pomerantz*, 36 Mass. App. Ct. 627, 630 (1994), the Appeals Court considered an arbitration clause pursuant to G. L. c. 251, § 2 (*b*). The court ruled that one of the reasons a timeliness issue was to be decided by the arbitrator was because the arbitration clause was broad, citing *AT&T Techs., Inc.* v. *Communications Workers*, 475 U.S. 643, 650 (1986) ("[a]ny dispute"). This distinction has been made in contexts other than those involving timeliness. See, e.g., *Loche* v. *Dean Witter Reynolds, Inc.*, 26 Mass. App. Ct. 296, 297 & n.2, 303-304 (1988) (broad arbitration clause covers violations of Federal securities laws).

[17]The Maryland courts view timeliness as a decision for the court because they see it as falling under their arbitration statute, and because of contract concerns. The Maryland courts have ruled that "inappropriate delay in demanding arbitration acts as a relinquishment of the contractual right to compel such a proceeding." *Chesapeake Beach* v. *Pessoa Constr. Co.*, 330 Md. 774, 748-749 (1993), quoting *Stauffer Constr. Co.* v. *Board of Educ. of Montgomery County*, 54 Md. App. 658, 668 (1983).

because previous decisions were concerned with negating the requirements of statutes designed to protect the public interest. See *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Auth.*, 387 Mass. 687, 693 (1982) (court will not apply estoppel against public entities where to do so would negate requirements of laws protecting public interest); *A P East, Inc.* v. *Assessors of Westborough*, 40 Mass. App. Ct. 912, 913-914 (1996), and cases cited (estoppel against public officials disfavored where reliance was on oral statement and statute set deadline for tax abatement application). The union's argument that there is no public interest to protect in this case, even if correct, is beside the point. There was ample support for the judge's findings that both grievants were aware or should have been aware that they had grievances when the city refused to treat the absences as injured leave, not when the grievants retired. In addition the judge found that neither party addressed the issue whether Chief Nunes had the authority to make such assurances.[18]

Because we conclude that the language of the arbitration clause excludes the issue of timeliness, we affirm the decision of the Superior Court judge.

*So ordered.*

---

[18]The cases the union cites involving the equitable tolling doctrine are not on point. *Irwin* v. *Department of Veterans Affairs*, 498 U.S. 89 (1990), concerned a plaintiff who did not file suit against his employer, the Department of Veterans Affairs, within the statutory thirty-day deadline. The Court was especially concerned with balancing the thirty-day deadline because the statute waived sovereign immunity. The Court did discuss the conditions under which it has granted equitable tolling: "We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights . . . [or] a garden variety claim of excusable neglect." *Id.* at 96. Here there is no evidence of a "trick" and the grievants had a union to assist them.