**RAYTHEON COMPANY, Plaintiff,**

v.

**Dennis M. DONOVAN, Defendant.**

**No. Civ.A.2002–10909–RBC.[1]**

United States District Court,
D. Massachusetts.

July 16, 2002.

---

**1.** With the parties' consent, this case has been referred and reassigned to the undersigned

100

for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Joan A. Lukey, Hale & Dorr, Boston, MA, for Dennis M. Donovan, plaintiff.

Henry A. Sullivan, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for Raytheon Co., defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY COURT PROCEEDINGS PENDING ARBITRATION, ETC. (# 3)

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

On May 1, 2002, plaintiff Raytheon Company ("Raytheon") filed a Complaint in Middlesex Superior Court against a former officer and employee, one Dennis M. Donovan ("Donovan"), seeking a declaratory judgment (Count I) that Donovan is not entitled to the benefits as outlined in an amendment to his employment agreement because the amendment is void ab initio and an award of damages (Count II) on the ground that Donovan's acts in connection with the amendment to the employment agreement were in breach of his fiduciary duties to Raytheon and its shareholders and those acts resulted in harm to Raytheon. (# 1, Exh. A, at pp. 14–15) On

May 17, 2002, Donovan removed the case to the United States District Court for the District of Massachusetts on the grounds of diversity of citizenship and an amount in controversy which exceeds $75,000. (# 1, p. 1)

Donovan has filed a motion to compel arbitration and stay judicial proceedings pending arbitration. (# 3) Raytheon opposes the motion (# 4). The matter was heard on July 1, 2002.

## II. THE FACTS

In an October 1, 1998 letter, Raytheon offered to hire Donovan as Senior Vice–President—Human Resources. The letter was drafted by Donovan's attorneys which Raytheon then reproduced on its own stationery. (# 1, Exh. A, p. 3) Donovan signed the agreement on October 7, 1998.(*Id.*) [2]

In late 1999 or early 2000, Donovan had a discussion with his superior, Chief Executive Officer Daniel Burnham ("Burnham"). Among the topics discussed were the decline in the value of Donovan's compensation package due to the decline in the value of Raytheon's stock and Donovan's recruitment by another company. (# 1, Exh. A, p. 6) As a result of this discussion, negotiations ensued which resulted in the execution of a document entitled "Second Amendment to Employment Agreement." [3] The document was drafted by Donovan's lawyers. (# 1, Exh. A, p. 7) The second agreement was in the form of a memorandum to Donovan from Burnham dated January 25, 2000 and was signed by Burnham presumably on January 25, 2000; Donovan signed it on May 13, 2000. (# 3, Exh. C) On March 19, 2001, Donovan left Raytheon

voluntarily "... in order to take a highly compensated position with Home Depot." (# 1, Exh. A, p. 12)

## III. THE ALLEGATIONS OF THE COMPLAINT

Raytheon alleges that the second agreement had the effect of increasing Donovan's compensation to obscene levels.[4] In essence, Raytheon alleges that as an officer of Raytheon, Donovan owed "... a fiduciary duty to the corporation and its shareholders," (# 1, Exh. A, p. 2), and violated that duty by seeking the terms of the second agreement and by the manner in which Raytheon was induced to agree to those terms. Specifically, Raytheon asserts that Raytheon received no additional consideration for the second agreement and that the second agreement provided that the benefits would accrue to Donovan even if he left the company. (# 1, Exh. A, p. 9) Further, Raytheon claims that Donovan knew that Raytheon's Management Development and Compensation Committee, which had to approve the second amendment, was being misled by the summary prepared for them which described the second agreement as being "Dennis Donovan Retention Items" (# 1, Exh. A, p. 1) and omitted crucial facts as to the true nature of the amount of compensation which Donovan would receive.

## IV. THE ARBITRATION CLAUSE OF THE EMPLOYMENT AGREEMENT

Section 9 of the original agreement, entitled "Dispute Resolution; Choice of

2. Hereinafter, this letter will be referred to as the "original agreement."

3. Hereinafter, "second agreement." Counsel represented that there was a First Amendment executed shortly after the original employment agreement was signed which corrected some "typographical errors." The

First Amendment is not relevant to the issue presently before the Court.

4. At the hearing on the motion, plaintiff's counsel used the figure $40 million dollars to describe the benefits which Donovan would receive under the second amendment.

Law" contains, in paragraph (a), an arbitration provision which reads as follows:

(a) **Any dispute relating to or arising under this Agreement** (with the exception of claims by Executive pursuant to the federal Age Discrimination in Employment Act) **shall be resolved by binding arbitration** pursuant to the procedures specified by the National Rules for the Resolution of Employment Disputes (the "Employment Arbitration Rules") established by the American Arbitration Association, effective June 1, 1997. Notwithstanding any provision of the Employment Arbitration Rules, neither party shall be entitled to discovery in the course of such arbitration, the arbitration shall take place in Boston, Massachusetts (or any other location mutually acceptable to Company and Executive), and shall be heard by a single arbitrator possessing at least ten (10) years of experience arbitrating employment disputes between employers and senior executives. **The sole function of the arbitrator shall be to enforce this Severance Agreement (or any employment agreement between Executive and the Company) pursuant to its terms, and the parties explicitly agree that the arbitrator shall have no power to vary the terms of this Severance Agreement or any employment agreement between the Executive and the Company.** The parties further agree that any award rendered by such arbitrator may be entered in any court with proper jurisdiction. All obligations pursuant to this Severance Agreement or any employment agreement between Executive and the Company, including all post-Termination Date payments to, and benefits provided for, Executive, shall continue in full force and effect pending a decision of the arbitrator. Each party shall pay its own arbitration costs, provided that should the Executive prevail in any arbitration action, the Company shall be liable to Executive for all attorneys fees and costs, and shall promptly pay the same.

# 3, Exh. A, p. 8 (emphasis supplied).

Donovan seeks to compel arbitration pursuant to this section.

Raytheon opposes the motion on a number of grounds. First and foremost, Raytheon argues that "... the arbitration provision on which Donovan relies ... precisely limits the scope of arbitration such as to exclude from arbitration the very claims he now seeks to arbitrate." Plaintiff's Opposition, Etc., # 4, p. 1. Second, Raytheon claims that the second agreement is void for lack of consideration. Third, Raytheon asserts that its claims arise only under the second amendment, that the second amendment does not contain an arbitration clause, and the arbitration clause contained in the original agreement does not apply because the second agreement is a "collateral agreement" as to which there was no agreement to arbitrate.

### V. ANALYSIS

It is clear that by virtue of Section 9(b) of the original agreement, the matter is governed by Massachusetts law. Just three years ago, the Supreme Judicial Court ("SJC") in the case of *Local Union No. 1710 v. City of Chicopee*, 430 Mass. 417, 420–1, 721 N.E.2d 378, 381–2 (1999) [5] reiterated the four principles which govern arbitration agreements. "The first principle is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he

**5.** The Massachusetts Appeals Court repeated and applied these same principles in a recent case, *Massachusetts Correction Officers Feder-* *ated Union v. Sheriff of Bristol County*, 55 Mass.App.Ct. 285, 770 N.E.2d 528, 529 (2002).

has not agreed so to submit.' " *Local Union 1710*, 430 Mass. at 420–1, 721 N.E.2d at 381 citing *AT & T Techs, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (other citations omitted). "The second principle is that the question whether an agreement creates a duty to arbitrate is 'undeniably an issue for judicial determination ... [u]nless the parties clearly and unmistakably provide otherwise.' " *Local Union 1710*, 430 Mass. at 421, 721 N.E.2d at 381 citing *AT & T Techs, Inc.*, 475 U.S at 649, 106 S.Ct. 1415 quoting *United Steelworkers of America*, 363 U.S. at 582–3, 80 S.Ct. 1347. "The third principle is that, 'in deciding whether the parties have agreed to arbitration, a court is not to rule on the potential merits of the underlying claims ... [including] determining whether there is particular language in the written instrument which will support the claim.' " *Local Union 1710*, 430 Mass. at 421, 721 N.E.2d at 381 citing *AT & T Techs, Inc.*, 475 U.S. at 649–50, 106 S.Ct. 1415 quoting *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

The final principle is that, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage ... Such a presumption is particularly applicable where the clause is **broad**.' " (emphasis added.)

*Local Union 1710*, 430 Mass. at 421, 721 N.E.2d at 381 citing *AT & T Techs, Inc.*, 475 U.S. at 649, 106 S.Ct. 1415 quoting *United Steelworkers of America*, 363 U.S. at 582–3, 80 S.Ct. 1347.

The final principle governs the resolution of Raytheon's challenge to the arbitration clause.[6]

Raytheon concedes that the first sentence of the arbitration clause which provides that "any dispute relating to or arising under this Agreement ... shall be resolved by binding arbitration ..." is broad and encompasses the claims contained in its complaint. However, Raytheon contends that the third sentence of the arbitration clause severely limits what the arbitrator can consider. That sentence reads:

The sole function of the arbitrator shall be to enforce this Severance Agreement[7] (or any employment agreement between Executive and the Company) pursuant to its terms, and the parties explicitly agree that the arbitrator shall have no power to vary the terms of this Severance Agreement or any employ-

---

6. The same principle is embedded in federal law. In the words of the Supreme Court: The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

7. The use of the term "Severance Agreement" is puzzling. The agreement is not referred to by that name in any other place in the agreement. This leads the Court to infer that the sentence was lifted from some other agreement, and carelessness on the part of Donovan's lawyers caused them to neglect to omit the word "Severance". The mistake is immaterial for purposes of the motion.

ment agreement between the Executive and the Company.

■ Raytheon claims that the first clause of the sentence ("[t]he sole function of the arbitrator shall be to enforce this Severance Agreement ... pursuant to its terms ...") grants the arbitrator only the power to order compliance with the original and second agreement and precludes the arbitrator from considering the claims that the second agreement is void ab initio or that Donovan breached his fiduciary duty in negotiating and presenting the terms of the second agreement to Raytheon. In other words, Raytheon's position is that the arbitrator can only enforce the agreement; he does not have the power to decline to enforce it on such grounds as Raytheon asserts in its Complaint (or on any other grounds, for that matter).

In my view, Raytheon's interpretation of the clause is a strained and unreasonable one. A reasonable interpretation, and one which is in keeping with the presumption in favor of arbitration, is that the clause means that the arbitrator has no power over any disputes between Raytheon and Donovan which do not arise under the Severance Agreement ("[t]he sole function of the arbitrator shall be to enforce ..." the agreement "(or any employment agreement between [Donovan] and [Raytheon])") In other words, the clause is a specific pronouncement that only "disputes relating to or arising under" the agreement are arbitrable. In addition, this interpretation is more in keeping with the second clause of the sentence which provides that the arbitrator does not have the power to "vary" the terms of the agreement.

■ Raytheon argues that since Donovan drafted the clause, the doctrine of contra proferentem applies, and since the clause is ambiguous, it must be construed against Donovan. There are two reasons why this argument lacks merit. First, the doctrine only applies if there is more than one reasonable meaning of a contract. Restatement (Second) of Contracts, § 206 (1979). As indicated, supra, I do not find that Raytheon's interpretation of the clause in question is a reasonable one. Second, while the doctrine of contra preferentem can be applied in interpreting arbitration contracts, "generally speaking, the presumption of arbitration applies to the resolution of scope questions." *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*, 226 F.3d 15, 25 (1 Cir.2000) (citations omitted); see also, *Rochdale Village v. Public Service Employees Union, Local No. 80*, 605 F.2d 1290, 1295 (2 Cir. 1979). "A scope question arises 'when the parties have a contract that provides for arbitration of some issues' and it is unclear whether a specific dispute falls within that contract." *Paul Revere Variable Annuity Ins. Co.*, 226 F.3d at 25 quoting *First Options v. Kaplan*, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). That is the situation in the instant case. The parties have a contract which provides for arbitration and the issue is whether the claims Raytheon has made fall within it. Thus, in this instance, the presumption in favor of arbitration trumps the doctrine of contra proferentem.

■ Lastly, Raytheon's interpretation of the clause conflicts with another doctrine respecting interpretation of contracts, i.e., "that a document should be read to give effect to all its provisions **and to render them consistent with one another.**" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (emphasis added; citations omitted). Raytheon's reading of the clause in question ("[t]he sole function of the arbitrator shall be to enforce ..." the agreement) renders it clearly inconsistent with the first sentence of the arbitration provision ("[a]ny dispute

relating to or arising under this Agreement ... shall be resolved by binding arbitration ...").

For all of these reasons, I rule that Raytheon's claims are subject to arbitration because they are "disputes relating to or arising under" the second agreement and the first clause of the third sentence of the arbitration provision ("[t]he sole function of the arbitrator shall be to enforce ..." the agreement) cannot, in all the circumstances, be reasonably interpreted to exclude them from the scope of what was agreed to be arbitrated, especially given the presumption of arbitrability of scope questions.

▮ Raytheon makes two other arguments. First, Raytheon argues that the second agreement is void because there was no consideration given to Raytheon for the increased benefits which Donovan obtained under it. I rule that the issue is one for the arbitrator, not the Court.

▮ Second, Raytheon argues that the second agreement, which does not contain a separate arbitration clause, is a collateral agreement, and as such, must contain its own arbitration clause or incorporate specifically the arbitration clause of the original agreement. In my view, this argument is completely without merit.

The second agreement is labeled "Second Amendment to Employment Agreement" and the first two sentences of the document read as follows:

We hereby agree that your Employment Agreement, dated October 1, 1998, as subsequently amended on November 12, 1998 by letter signed by our respective counsel (the "Employment Agreement"), be and hereby is amended effective January 25, 2000, as provided for herein. Except as specifically modified herein, the terms of your Employment Agreement, and all other agreements, exhibits and others instruments related thereto or to your employment with

Raytheon (including any of its successors or assigns, the "Company") shall remain in full force and effect.
# 3, Exh. C, p. 1.

There is no ambiguity here; the document is specifically delineated as an "amendment" incorporating all unmodified provisions of the original agreement, including the arbitration clause.

The case cited by Raytheon in support of its position that the second agreement is a collateral agreement is simply inapposite. In Rochdale Village, Inc., the Court was dealing with a collective bargaining contract which mandated arbitration of "[a]ny and all disputes hereunder ...". *Rochdale Village, Inc.*, 605 F.2d at 1293. There was an issue as to whether the collective bargaining contract had expired as a result of a later "side" or "collateral" agreement. The Court held that the arbitration clause of the collective bargaining contract did not apply to disputes arising under the "side" or "collateral" agreement; it only applied to disputes arising under the original collective bargaining contract. *Id.* at 1297.

In the instant case, the arbitration clause gave the arbitrator power to enforce not only the original agreement but also "... any employment agreement between the Executive and the Company." (# 3, Exh. A, p. 8) Thus, there was an agreement to arbitrate disputes arising under the second agreement since the second agreement clearly qualifies as an "employment agreement" between Donovan and Raytheon.

### VI. ORDER

For all of the foregoing reasons, it is ORDERED that Defendant's Motion to Compel Arbitration and To Stay Court Proceedings Pending Arbitration, Etc. (# 3) be, and the same hereby is, ALLOWED. Raytheon is ORDERED to submit the claims it makes in this lawsuit

to arbitration in accordance with Section 9 of the original agreement. It is FURTHER ORDERED that proceedings in the instant case be, and the same hereby are, STAYED pending completion of the arbitration.