Troy, Paul E., J.
The plaintiff Suffolk County Sheriff (“the sheriff’) petitions this court to stay arbitration of a grievance filed by defendant AFSCME Council 93, Local 419 (“the union”) pursuant to the parties’ collective-bargaining agreement (“the CBA”). This matter came before the court on the defendant’s motion for judgment on the pleadings. Pursuant to Mass.R-Civ.P. 12(c), this court treated the motion as one for summary judgment. For the following reasons, the defendant’s motion must be DENIED, and the arbitration must be STAYED.
Background
The following is a summary of the relevant and undisputed facts from the record.
The union is the collective-bargaining representative for certain employees of the sheriff, and a contract between the parties was in effect during the events giving rise to this claim. Article X, §9(A) of the CBA allowed employees within each shift to bid for scheduled days off by seniority.[1]
In April 2002, the sheriff determined that budget cuts necessitated layoffs within the bargaining unit. The sheriff then informed the union that some remaining employees would be assigned to different shifts, with attendant changes in scheduled days off and vacations.
The union filed a class-action grievance, #E-369, dated May 23, 2002, protesting the changes in scheduled days off. The grievance cited §9(A) as the source *241 of the employees’ rights. Pursuant to the CBA, management representatives followed a two-step procedure. In each step, the grievance was denied on the grounds that grievances over §9 are barred by §9(G), which provides that “disputes arising out of the implementation of this section are not subject to the grievance and arbitration procedure of the parties’ collective bargaining agreement.”
The union appealed management’s decision to an arbitrator. The sheriff refused to consent to arbitration, again citing §9(G). The union responded by writing to the arbitrator that §9(G) did not apply “once the implementation (of work schedules) has been set.” The union argued that an arbitrator was needed first to interpret the scope of §9(G), then to hear the merits of the grievance. After again refusing to participate in arbitration, the sheriff petitioned this court for a stay of arbitration pursuant to G.L.c. 150C, §2(b). Chapter 150C is titled “Collective Bargaining Agreements to Arbitrate.” Section 2(b) reads, in pertinent part:
Upon application, the superior court may stay an arbitration proceeding commenced or threatened if it finds . . . that the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration and disputes concerning the interpretation or application of the arbitration provision are not themselves made subject to arbitration.
The union answered the sheriffs complaint, then filed two motions, one to dismiss for failure to state a claim upon which relief could be granted, and the other for judgment on the pleadings. The first motion was denied, pursuant to Mass.R.Civ.P. Rule 12(g), for untimeliness. The second motion argued that this court could not grant a stay of arbitration without viewing actual evidence of the CBA.[2] The motion was thus treated as a motion for summary judgment, and the parties were granted leave to present additional evidence.
Discussion
Summary judgment is appropriate when there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c) (1974). Summary judgment may also be granted to the non-moving party. Id.
I. There Are No Material Facts in Dispute
The union’s answer to the complaint admitted nearly everything the sheriff had alleged. The union denied an allegation that the sheriff had informed the arbitrator about the sheriffs intent to seek a stay of arbitration, but acknowledged the point was moot. The union also denied a paragraph in the sheriff s demand for relief, but this involved a conclusion of law rather than a dispute of fact. None of the union’s subsequent submissions have placed any facts in controversy. The parties agree on the content of the CBA, the circumstances giving rise to the union’s grievance, the history of the grievance being filed and denied, and the sheriff s unwillingness to arbitrate. Their one disagreement involves a question of law, whether §9(G) prevents a grievance alleging a violation of §9 (A) from being submitted to arbitration.
II. The Plaintiff Is Entitled to Judgment as a Matter of Law
When parties to a contract disagree as to the arbitrability of a dispute, the threshold question is whether a court or an arbitrator determines whether the dispute is subject to arbitration. Massachusetts courts look to federal case law when interpreting G.L.c. 150C, §2. Local U. No. 1710, Int. Assn. F. Fighters v. Chicopee, 430 Mass. 417, 420 (1999). The United States Supreme Court summarized four principles governing arbitrability in AT&T Technologies v. Communications Workers, 475. U.S. 643 (1986). Those principles are: parties who have not agreed to arbitrate may not be compelled to; courts, not arbitrators, decide whether the parties agreed to arbitrate; in ruling on a claim’s arbitrability, courts do not pass judgment on the claims’ merits; and courts presume an intent to arbitrate absent “positive assurance” to the contrary. Id. at 648-50. Cf. John Wiley & Sons v. Livingston, 376 U.S. 543, 547 (1964) (reasoning contractual nature of duty to arbitrate means court must interpret contract to resolve arbitrability).
Questions of arbitrability may be classified as substantive, i.e., whether the parties agreed to submit the subject matter of a claim to arbitration, or procedural, i.e., whether the claimant has taken all necessary steps before bringing a claim to an arbitrator. Courts, not arbitrators, resolve substantive questions. See, e.g., AT&T, 475 U.S. at 652 (remanding because lower court failed to ask if contract specifically excluded disputed clause from arbitration); Wiley, 376 U.S. at 553 (determining arbitrability based upon scope of contractual arbitration clause); Chicopee, 430 Mass. at 423 (holding courts must determine scope of arbitration clause before considering procedural questions). By contrast, because procedural issues often cannot be separated from the merits of a claim, courts allow arbitrators to settle procedural disputes when the subject matter of a grievance is otherwise fit for arbitration. Wiley, 376 U.S. at 557-58 (rejecting attempt to have court determine procedural compliance before arbitrator heard substantive claim). Cf. Howsam v. Dean Witter Reynolds, 537 U.S. 79, 85 (2002) (endorsing broad rule where courts resolve substantive arbitrability and arbitrators resolve procedural arbitrability).
Here, the parties present a substantive question, whether the CBA allows §9 disputes to be subject to arbitration.[3] This court must thus determine the intent behind the contract language. A court must presume the parties intended to submit their disputes to arbitration. AT&T, 475 U.S. at 650 (holding contractual arbitration clauses create presumption of willing *242 ness to arbitrate); Chicopee, 430 Mass. at 420-21 (endorsing AT&T principles of arbitrability). The presumption is broken, however, if the parties’ contract gives “positive assurance” they did not intend to arbitrate the dispute in question. AT&T, 475 U.S. at 650. The question before this court, then, is whether §9(G) represents “positive assurance” the parties did not intend to arbitrate the current dispute. If §9(G) is ambiguous, the presumption of arbitrability requires that this court deny the sheriffs request for a stay of arbitration.[4]
The sheriff argues that “implementation” in §9(G) refers to the ongoing implementation of work schedules. The union argues that “implementation” refers to the initial implementation of work schedules, such that grievances over subsequent changes to the schedules would be arbitrable. If the word “implementation” were considered in isolation, this court could find ambiguity. Section 9(G), however, addresses the arbitrability of “implementation of this section” (emphasis added). This court must thus look at the rest of §9 to determine whether the parties intended to bar arbitration of any grievance arising from the section. See MCI WorldCom Communications, Inc. v. Department of Telecommunications and Energy, 442 Mass. 103, 112-13 (2004) (discerning parties’ intent from contract language, context of entire agreement, and other circumstances). Cf. Massachusetts Mun. Whol. El v. Springfield, 49 Mass.App.Ct. 108, 111 (2000) (“Evidence may be reviewed that elucidates the meaning of a contract term”).
The union’s grievance is based upon §9(A), which allows employees to bid for scheduled days off “after the shift selection process has concluded.” This section, read alone, arguably refers to either a one-time or an ongoing process. Section 9(F), however, is less ambiguous. This section addresses the scheduling rights of employees who request a shift change, who transfer into the bargaining unit, or who (as in this case) are transferred “to accommodate the operating needs of the institution.” Because §9(F) speaks to changing circumstances, it would make no sense if its “implementation” were understood to mean a one-time event.
This court holds that “implementation of this section” in §9(G) can be understood only to refer to ongoing acts of implementation. Therefore, there cannot be a reasonable disagreement as to §9’s arbitrability, and the sheriff is entitled to a stay of arbitration as a matter of law.
ORDER
For all of the foregoing reasons, the defendant’s, AFSCME Council 93, Local 419, Motion for Summaiy Judgment is DENIED. This court also ORDERS a stay of arbitration for Grievance No. E-369.

 Subsequent references to §9 of the CBA refer to Article X, §9-

The sheriffs complaint and supporting memorandum did not include a copy of the CBA.

The union’s reliance on Howsam v. Dean Witter Reynolds, 537 U.S. 79 (2002), and Massachusetts Highway Dept. v. Perini Corp., 444 Mass. 366 (2005), is misplaced. Where Howsam spoke to arbitrability, it held that a procedural question (the timeliness of a claim) was for an arbitrator to decide. Howsam, 537 U.S. at 85. The passage from Massachusetts Highway cited by the union likewise speaks to procedural, not substantive, arbitrability. Massachusetts Highway, 444 Mass. at 376 n. 11 (holding arbitrators may resolve procedural questions unless expressly forbidden by parties’ contractual agreement).

The mere fact of disagreement over contract interpretation does not make a contract ambiguous. Jefferson Ins. Co. of New York v. Holyoke, 23 Mass.App.Ct. 472, 475 (1987) (holding courts need not find ambiguity “simply because a controversy exists”). The union cites G.L.c. 150E, §6 to bolster its argument that the parties have a good-faith disagreement, but this statute speaks only to a good-faith duty to negotiate, not arbitrate, wages and working conditions.